## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RODJAUN ORLANDO JAMES
NEAL-WILLIAMS,

       Plaintiff,

       v.

ADDISON, et al.,

       Defendants.

Civil Action No.: PJM-21-3280

### MEMORANDUM OPINION

In this civil rights action, Plaintiff Rodjuan Orlando James Neal-Williams alleges that Defendants Adria Addison, Stephen Darden, Oladys Beza Villatoro, Officer Thomas Bryant, Officer Jamal Oputa, Corporal Andrew Robinette, Corporal Jeffrey Butterworth, Sergeant Christopher Coulby, Sergeant Brandon Murphy, Nurse Edith Kiplivi, Sergeant Eric Watkins, Correctional Specialist Karalynn Davis, Sergeant Ibiso Erekosima, Correctional Specialist Sylvia Hernandez, Director Angela Talley, and Warden Susan Malagari used excessive force against him, sexually harassed him by subjecting him to an illegal strip search, deprived him of personal property, and failed to provide him with adequate medical care, all in violation of his constitutional rights.[1] Defendants Addison and Darden moved to partially dismiss the Complaint as to claims of sexual harassment, inadequate medical care, and theft of personal property. ECF Nos. 31 and 31-2 at 2. Defendants Villatoro, Bryant, Oputa, Robinette, Butterworth, Coulby, Murphy, Kiplivi, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari moved to dismiss the Complaint against them in its entirety. ECF No. 33. Neal-Williams opposes both motions, and defendants filed replies. ECF Nos. 42-45. Having reviewed the submitted materials, the Court finds no

---

[1] The Clerk shall be directed to correct the names of the Defendants on the docket. In addition, Neal-Williams states that the correct spelling of his first name is Rodjuan. ECF No. 27. The Clerk will likewise be directed to correct Neal-Williams' name on the docket.

hearing is necessary. *See* D. Md. Local R. 105.6 (2023). For the reasons that follow, the pending dispositive motions will be granted in part and denied in part.

Also pending are Neal-Williams' Motions to Request Documents and Camera Footage (ECF No. 19) and for Appointment of Counsel (ECF No. 25), and Defendants' Motions to Quash (ECF No. 23) and for Leave to File Out of Time (ECF No. 38). For the reasons outlined below, Neal Williams' Motion to Request Documents and Camera Footage will be denied without prejudice; Neal-Williams' Motion for Appointment of Counsel will be granted; Defendants' Motion to Quash will be denied; and Defendants' Motion for Leave to File Out of Time will be granted *nunc pro tunc*.

## BACKGROUND

### I.    Plaintiff's Allegations[2]

Neal-Williams, formerly incarcerated at the Montgomery County Correctional Facility ("MCCF"), alleges that on November 17, 2021, he was in the recreation pod when defendant Addison came to tell him that his rec time was over. ECF No. 1 at 3. Neal-Williams disputed the time with Addison, arguing that his rec time had started late due to defendant Officer Oputa ("Oputa") bringing him to rec late. *Id.* He also argued that he needed to wait for Oputa to bring him a mask, which were required in the halls of the jail at the time. *Id.* at 4. Neal-Williams alleges that in response, Addison threw a mask at him and hit him, at which point Neal-Williams "swung [his] hand to keep her off of [him]. She then got even more angry and came at [him] again so [he] backed up and swung [his] hand again keeping a distance. She then called a code for officer assistance." *Id.* Neal-Williams alleges that defendant Darden arrived, and without asking any questions, "took strong blows to [his] face dropping [him] to the floor in the rec pod. When on

---

[2] Neal-Williams makes additional factual allegations in his responses in opposition to Defendants' motions. ECF Nos. 42, 45-46. However, because "for the purposes of a motion to dismiss, [a] Plaintiff is bound by [his or] her Complaint and cannot amend it through his briefs," these additional allegations will not be considered. *Stalman v. United States*, 995 F.Supp.2d 446, 453 (D.Md. 2014) (citations omitted).

the floor Darden and Addison repetitively kept striking [him] in the face with no remorse." *Id.* at 4-5. Neal-Williams claims that he never resisted and "put [his] hands over [his] face and head to cover the hard blows but Darden kept pulling [his] hands off [his] face so he [could] land more blows." *Id.* at 5.

Next, Neal-Williams alleges that defendants Bryant, Robinette, Butterworth arrived and "man-handled" him as they walked him out of the pod. ECF No. 1 at 4-5. He alleges that when he stepped out of the rec pod, they "slammed [his] face really hard on the thick glass," and "Bryant applied extreme pressure hurting [him] bad." *Id.* He was then "slammed to the hard, dirty floor where there [were] knees on [his] back and neck as Bryant applied pressure to [his] face and floor as [he] screamed in pain and all the inmates on the unit watched." *Id.* The staff walked Neal-Williams off the unit, and once again slammed his face against thick glass across from medical. *Id.* at 6. He was brought to a search cell at the processing unit, where he was thrown to the floor and "began getting jumped by all of the staff that entered." *Id.* Defendants took "serious blows of hatred to the head, stomps and knees to the head, face and body." *Id.* Neal-Williams specifies that he saw Bryant, Darden, and "Ms. V.," defendant Villatoro, participating in this assault, but there were others. *Id.* Additional staff were present watching the beating. *Id.* Neal-Williams alleges that his arms and legs were cuffed while he was beaten in the search room. *Id.* When the beating stopped, Neal-Williams says that he was told to stand facing the wall, strip off all his clothes, and squat, causing him to feel "sexually violated" because so many people were present and because there was no reason to conduct the strip-search. *Id.* at 7.

After the strip-search, Neal-Williams says he was taken to the medical unit and saw defendant Nurse Kiplivi. ECF No. 1 at 7-8. He alleges that he did not have a chance to tell the nurse about his injuries before she walked out of the room and does not state whether she examined him or treated any of his injuries. *Id.* at 7. When Kiplivi left the room, Robinette and Butterworth

3

lifted Neal-Williams out of a chair, slammed his face against a medical device, and slammed him to the floor. *Id* at 8. Bryant then placed pressure against Neal-Williams' face pushing it to the ground, and as he protested, defendant Murphy told him "'shut up you hit a black female I don't care what you got to say.'" *Id.* Bryant continued to apply pressure to Neal-Williams' face, and then, along with Darden, slammed his face against the glass across from the nurse's office, again applying pressure. *Id.* Neal-Williams "screamed saying 'yall can hurt me all you want but you won't break me,'" to which Darden responded, "'shut up, I beat the fuck out [sic] you and you gave me what I wanted … to see you cry." *Id.* Addison was laughing at him and demanding that Neal-Williams tell the officers that he was hitting her first. *Id.* at 8-9. Neal-Williams again alleges that several staff silently watched as he was abused. *Id.* at 9.

Neal-Williams claims that he was then taken back to the processing unit and strapped tightly to a restraint chair with his hands still cuffed behind his back "for over an hour for no reason." ECF No. 1 at 9. During this time, he repeatedly asked to go to the hospital or to see the nurse, but the nurses did not respond even after an officer talked to them. *Id.* at 10. His head, rib, face, and body were aching and he was starting to lose feeling in his leg. *Id.* Nurse Kiplivi eventually came to see him, but only looked at him and refused to send him to the hospital. *Id.* Butterworth and Robinette escorted him back to the medical unit and denied his requests for a wheelchair, even though he was limping. *Id.* In a medical holding cell, Butterworth and Robinette removed the cuffs, and Robinette stepped on his leg for no reason. *Id.* at 11. After the incident, Neal-Williams was deprived of his property, including hygiene items, clothes, medical property, and legal paperwork, denied recreational time, and denied medical care. *Id.* at 12-13.

Neal-Williams states that he had a disciplinary hearing regarding the incident, at which he was found guilty of five charges even though the case was not investigated, and witnesses were not interviewed. ECF No. 1 at 13. Neal-Williams alleges that the adjustment committee relied

4

entirely on Addison's false report and "switched up words that [he] said during [his] hearing and wrote things that [he] did not say." *Id.* He additionally alleges that Erekosima, Hernandez, and Malagari erroneously charged him $4126 for a broken window that he "[h]ad not a single thing to do with." *Id.* at 14.

## II.   Defendants' Responses

### A. Defendants Addison and Darden

Defendants Addison and Darden move to partially dismiss the Complaint as to the claims of sexual harassment related to the strip search, inadequate medical care, and deprivation of personal property. ECF No. 31, 31-1. Addison argues that there is no allegation that she personally participated in the strip search; therefore, that claim against her should be dismissed. ECF No. 31-1 at 7. Darden argues that he is entitled to qualified immunity and that the strip search was consistent with MCDC policy.[3] *Id.* at 8-12. As to Neal-Williams' inadequate medical care claim, Addison and Darden both argue that Neal-Williams has not stated a claim for inadequate medical care against them because, as county officials, they are entitled to rely on the judgment of the medical staff. *Id.* at 13-14. Finally, Addison and Darden argue that Neal-Williams' claim against them regarding the loss of his personal property should be dismissed because the Complaint does not allege that they confiscated any property. *Id.* at 15.

### B. Defendants Villatoro, Bryant, Oputa, Robinette, Butterworth, Coulby, Murphy, Kiplivi, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari's Response

Defendants Villatoro, Bryant, Oputa, Robinette, Butterworth, Coulby, Murphy, Kiplivi, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari move to dismiss the Complaint against them in its entirety. ECF No. 33. First, they raise the affirmative defense that Neal-Williams has not exhausted his administrative remedies. *Id.* at 6-9. While they acknowledge that

---

[3] Addison argues that she would also be entitled to qualified immunity if she had participated in the strip search. ECF No. 31-1 at 10.

he filed a grievance regarding the events described in the Complaint, they argue that the grievance only applies to the officers named within the grievance, Addison and Darden, and does not serve to exhaust administrative remedies against the remaining Defendants because it did not specifically name them. *Id.* at 8. Next, these defendants argue that the Complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure, specifically in that "[i]t is not clear which of Neal-Williams' purported claims are directed at each particular defendant, and how each defendant violated his rights." *Id.* at 9. Defendants further argue that Neal-Williams has not stated any claims against them and that they are entitled to qualified immunity. *Id.* at 10, 15-19.

As to Neal-Williams claim of sexual harassment related to a strip search, defendants argue that Neal-Williams failed to state a claim because he "does not challenge the propriety of the way in which the search was conducted." ECF No. 33 at 14. In support, defendants submit the MCCF handbook which outlines the conditions under which a strip search is permitted as well as documentation of Neal-Williams having been moved to the special management housing to await his adjustment hearing, which requires a strip search. ECF Nos. 33-2 and 33-4.

As to inadequate medical care, Defendants argue that Neal-Williams has not alleged either that he had a serious medical need or that any defendant was aware of that need and denied him necessary care, because Nurse Kiplivi examined Neal-Williams and determined that he did not need to go to the hospital. ECF No. 33 at 12.

As to denial of due process related to Neal-Williams' disciplinary hearings, defendants argue that the claim should be dismissed because the Complaint does not allege a failure of necessary due process considerations in a disciplinary hearing. ECF No. 33 at 12-13. Defendants argue that the allegations in the Complaint are untrue, and present evidence to support their contention. *Id.* at 13; ECF Nos. 33-4 and 33-5. However, as Defendants have not moved for

summary judgment, this evidence cannot be considered on a motion to dismiss pursuant to Rule 12(b)(6).

## STANDARDS OF REVIEW

All Defendants move to dismiss the Complaint for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing the motion, the Court accepts the well-pleaded allegations as true and in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

## DISCUSSION

I.    **Exhaustion of Administrative Remedies**

7

Defendants Villatoro, Bryant, Oputa, Robinette, Butterworth, Coulby, Murphy, Kiplivi, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari assert the affirmative defense that Neal-Williams failed to exhaust his administrative remedies. ECF No. 33 at 6. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) 2008). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859-60.

MCCF has established a five-step inmate grievance procedure. ECF No. 33-2 at 17-19 (Inmate Handbook). The handbook directs any inmate with a complaint to request an Inmate Grievance Form. *Id.* at 18. First, inmates must complete and return the form to a correctional staff

member for review and response. *Id.* Inmates may either accept or disagree with the action taken by the staff member. *Id.* Second, if the inmate disagrees with the action, appropriate personnel have five working days to conduct the same review process as the initial correctional staff member. *Id.* Third, if an inmate disagrees with that determination, the inmate may appeal the decision to the appropriate Section head or designee, who must respond within five working days. *Id.* Fourth, if the inmate is dissatisfied with that response, the inmate may then appeal to the Warden for a review to be completed within five working days. *Id.* Fifth, the Warden's determination may be appealed to the Department Director within five working days. *Id.*

Here, Defendants Villatoro, Bryant, Oputa, Robinette, Butterworth, Coulby, Murphy, Kiplivi, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari acknowledge that Neal-Williams filed a grievance regarding the incident at issue in the Complaint, and they do not allege that he did not pursue that grievance through the entire process. ECF No. 33 at 8.   Instead, Defendants argue that by not identifying particular defendants in his grievance, other than Addison and Darden, he has not exhausted his remedies as to those Defendants who were not named in the grievance. *Id.* They argue that the purpose of the grievance is, in part, to put the aggrieved staff member on notice and to allow the named staff member to participate in the response because they may be the best source of information about the grievance; therefore, naming individual staff members is required. *Id.* at 7-8. In support of this argument, defendants cite *Heaton v. Wray*, 2010 WL 5390118 (D.S.C. Nov. 10, 2010), where the district court granted summary judgment in favor of two defendants who were not named in the plaintiff's grievance.   However, this case is not analogous.  In *Heaton*, the plaintiff's grievance requested information regarding an investigation into one defendant, who was alleged to have had inappropriate sexual contact with the plaintiff; the grievance did not mention the other two defendants or make reference to the allegations against them that ultimately appeared in the complaint. *Heaton*, 2010 WL 5390118 at *2. In other words,

9

the Complaint was dismissed against two defendants who were not only unnamed in the grievance, but their actions or inactions were not mentioned in the grievance either.  In contrast, Neal-Williams' grievance complains of the exact same conduct at issue in this case, makes specific allegations against the unidentified defendants, states that he does not know their names, and suggests that review of video surveillance would reveal the identities of the individuals involved. ECF No. 33-6.  There is simply no merit to defendants' argument that because Neal-Williams failed to specify by name the numerous individuals he alleges were present and/or participated in the alleged beating, he failed to exhaust his administrative remedies.  Anyone involved in these alleged events would have no trouble discerning the basis of the grievance and whom it is against. As noted in *Heaton*, it is not necessary to specifically name a defendant in a grievance, but the plaintiff must present "at least the essence of her claims." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 218-219 (2007).  "'[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" *Id.* (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).  The Fourth Circuit has found that where the grievance process does not require the naming of particular defendants, the exhaustion of administrative remedies does not require such specificity either. *Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008).  As Defendants present no other support for their affirmative defense, they have failed to show that Neal-Williams' claims are unexhausted, and the Complaint will not be dismissed on that basis.

## II.    Section 1983 Claims

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, deprives her "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt.*

10

*City Police Dep't v. Owens*, 575 U.S. 983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245. To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Loftus v. Bobzien*, 848 F.3d 278, 284-85 (4th Cir. 2017); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

11

**A.    Excessive Force – Personal Participation**

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

As summarized above, Neal-Williams alleges that numerous individuals used excessive force against him following the altercation with Addison. Specifically, Neal-Williams alleges various instances of excessive force against defendants Bryant (ECF No. 1 at 5-6, 8); Robinette (*id.* at 8, 9-11); Butterworth, (*id.* at 8, 10); and Villatero (*id.* at 5-6). However, he does not allege that defendants Oputa, Coulby, Kiplivi, Murphy, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari personally participated in any acts of excessive force against him.[4] Furthermore,

---

[4] Neal-Williams alleges that defendant Murphy was present and spoke to him while Bryant was holding his face to the ground. ECF No. 1 at 8. While he has not stated a claim against Murphy or any other specific defendant for failing to protect him from harm, he may do so in his amended complaint, if appropriate.

while Talley and Malagari are supervisory officials, Neal-Williams has not presented any evidence of supervisory liability. As such, defendants Oputa, Coulby, Kiplivi, Murphy, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari's motion to dismiss will be granted as to the excessive force claim.

### B. Sexual Harrassment

#### 1. Fourth Amendment Violation

Neal-Williams claims that he was sexually harassed by way of a strip-search conducted for no reason and in front of numerous people. ECF No. 1 at 7. Strip searches of pretrial detainees implicate the Fourth and Fourteenth Amendments. In *Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012), the Supreme Court held that "every detainee who will be admitted to the general population [of a jail] may be required to undergo a close visual inspection while undressed," acknowledging that such blanket searches were not *per se* unreasonable, even where such searches extended to individuals arrested for minor offenses. *Id.* at 322, 330-40. Determining whether a particular strip search of a pretrial detainee is performed in an unreasonable manner "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). However, the Supreme Court has expressed that:

> correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities. The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials. This Court has repeated the admonition that, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these

13

considerations courts should ordinarily defer to their expert judgment in such matters.

*Florence*, 566 U.S. at 328 (internal citations and quotation marks omitted).

Given that strip searches of pretrial detainees prior to placing them in general population are not per se unconstitutional, the inquiry in the instant case is whether Neal-Williams has alleged sufficient detail to suggest that the challenged strip search was unreasonable.

Courts have recognized that needless exposure of inmates to others, particularly others of the opposite sex, during a strip search can violate the Fourth Amendment. *See Harris v. Miller*, 818 F.3d 49, 58-59 (2d Cir. 2016) (involving visual inspection of female inmate's genitalia by male officer): *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995) (involving body cavity search of male inmate in view of female officials and staff); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) (involving the forcible removal of female inmate's underwear in presence of male guards). However, a group strip search prior to commitment to a city jail which served the jail's need efficiently to search groups of incoming detainees did not constitute an unreasonable search under the Fourth Amendment. *Williams v. City of Cleveland*, 907 F. 3d 924, 936 (6th Cir. 2018); *see also Bell*, 441 U.S at 559 (determination of whether a particular search violates the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted").

Here, Neal-Williams alleges that Bryant and Darden forced him to remove all of his clothing and squat down in front of a large number of people. ECF No. 1 at 7. He further alleges that there was no reason for this action. In response, defendants argue that the strip search was consistent with MCCF's policy of strip-searching inmates prior to placement in special management housing, where Neal-Williams was to be assigned until his adjustment hearing. ECF

14

Nos. 31 at 33 at 15. However, the Complaint alleges the opposite – that the strip search was conducted without reason. Taken as true, the allegation that defendants subjected Neal-Williams to an unnecessary strip search in front of numerous people is sufficient to state a claim.

### 2. Qualified Immunity[5]

Defendants Darden and Bryant claim that they are entitled to qualified immunity regarding Neal-Williams' claim that he strip-searched him for no reason in front of a lot of people. ECF Nos. 31-1 at 8; 33 at 15. Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome a claim of qualified immunity from a § 1983 claim, there must be a showing that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635,.646 n.6 (1987) (citations omitted); *Wilson v. Kittoe*, 337 F.3d 392, 391 (4th Cir. 2003). If the Court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

---

[5] The Court only addresses defendants' qualified immunity defense as to the illegal strip-search claim, because all other claims for which it was raised are being dismissed on other grounds. No defendant raised qualified immunity in the context of the excessive force claim.

Neal-Williams alleges that he was strip-searched in front of a lot of people for no reason, which, taken as true, is a violation of his rights. ECF No. 1 at 7. Darden and Bryant that they were following MCCF policy and strip searching Neal-Williams to ensure that he did not have any weapons prior to his being moved to the because he was being moved to each argue that they are entitled to qualified immunity because, under the circumstances wherein Neal-Williams engaged in an altercation with an officer, and was charged with several rules violations, they acted according to MCCF policy and that a reasonable officer would not realize that the search was unlawful. ECF Nos. 31-1 at 9-10 and 33 at 15. However, Neal-Williams alleges that the same officers who were allegedly beat him, conducted a strip search without justification and in front of numerous people, and then continued the beating. These allegations do not comport with Defendants' argument that the strip search was conducted according to policy. ECF No. 1 at 7. As there is a dispute of fact as to how and why the strip search was conducted, a determination of qualified immunity would be premature at this juncture; the claim will not be dismissed on that basis.[6]

### C. Inadequate Medical Care

At the time of the incident giving rise to this case, Neal-Williams was a pretrial detainee with charges pending in the Circuit Court for Montgomery County.[7] ECF No. 31-1 at 2. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*,

---

[6] As they did not move for summary judgment, the evidence submitted in support of Defendants' qualified immunity defense was not considered. Defendants are entitled to raise their qualified immunity defense again in any future motion for summary judgment.

[7] Defendants state that Neal-Williams is a pretrial detainee with charges pending for murder and attach a docket sheet for that case. ECF No. 31.1 at 2 and 31-2. While Neal-Williams takes issue with Defendants' unnecessary emphasis on the type of charges he is facing, he does not contest that he is a pretrial detainee. ECF No. 42. The attached docket sheet is not relevant here and will not be considered.

110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). In turn, the Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).

Deliberate indifference to the serious medical needs of a pretrial detainee violates the Due Process Clause. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (concluding that, because it is sufficient for liability under the 8th Amendment, "deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), cert. denied, 529 U.S. 1067 (2000); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir.1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.")). The Fourth Circuit has held that, though the precise scope of a pretrial detainee's Fourteenth Amendment rights is "unclear," a violation can be made out when a pretrial detainee "shows [that a state actor demonstrated] deliberate indifference to serious medical needs"

under cases interpreting the Eighth Amendment. *Mays v. Sprinkle,* 992 F.3d 295, 300 (4th Cir. 2021).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer,* 536 U.S. 730, 737 (2002); *Scinto v. Stansberry,* 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley,* 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *see also Anderson,* 877 F.3d at 543. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan,* 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons,* 849 F.3d 202, 209-10 (4th Cir. 2017); *King,* 825 F.3d at 218; *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey,* 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer,* 511 U.S. at 839, 840; *see also Anderson,* 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of

harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'"

*Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir.

2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness

requires knowledge both of the general risk, and also that the conduct is inappropriate in light of

that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes

essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a

risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101,

105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement

can be met through direct evidence of actual knowledge or through circumstantial evidence tending

to establish such knowledge, including evidence "that a prison official knew of a substantial risk

from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S.

at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he]

responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S.

at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response

to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken

must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*,

240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus

must be on precautions actually taken in light of suicide risk, not those that could have been taken))

*see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference

that he believed treatment was necessary and that failure to provide it would pose an excessive

risk).

Here, Neal-Williams alleges that he requested medical care for injuries sustained during

the alleged assaults on him and that he was denied medical care. ECF No. 1 at 5, 7. Specifically,

he alleges that the assaults left him bleeding from his mouth with bruises on his body and face.

ECF No. 1 at 7-8 and 10. When he saw Nurse Kiplivi after the initial incident, he alleges that she told him to calm down but he couldn't, and that he was not able to tell her where he was hurting before she left the room, after which Robinette, Butterworth, and Bryant continued their assault on him while Murphy was present. *Id.* at 8. Neal-Williams does not state whether or not Kiplivi examined him or provided any medical treatment prior to leaving the room. *Id.*

Later, Neal-Williams alleges that he repeatedly asked for medical care and to be taken to the hospital, but that the nurses did not respond or provide treatment even when alerted by an officer.[8] *Id.* at 10. When Nurse Kiplivi eventually came to see him, she told him that he did not have to go to the hospital without examining him. *Id.*

The Complaint alleges repeated and serious assaults that caused bleeding, bruises, and significant pain, which constitute an allegation of a serious medical need. He alleges that Nurse Kiplivi left the examination room before he was able to describe his injuries, and did not examine him later when he repeatedly called for medical attention and asked to be taken to the hospital. As alleged, Neal-Williams has alleged that Kiplivi knew he was suffering from a serious medical need and failed to provide medical treatment with deliberate indifference. Kiplivi's motion to dismiss the inadequate medical care claim against her will be denied.

Neal-Williams alleges that defendants Butterworth and Robinette told him to "shut the fuck up" when he was trying to talk to Nurse Kiplivi. ECF No. 1 at 7. When the nurse left the room before Neal-Williams finished talking with her, Butterworth and Robinette, along with Bryant, continued to beat him. *Id.* at 8. Murphy was also present, telling Neal-Williams that he did not care what he said because he hit a black female. *Id.* Taken as true, the Complaint alleges that these defendants removed Neal-Williams, who required medical attention for injuries sustained

---

[8] Neal-Williams names nurses Kabba, Uddin, and Carmen and Officer Maladano in the body of his Complaint, but he does not list them as defendants in the caption. ECF No. 1 at 12. As these individuals were not listed as defendants, they were not added to the docket and were not served. It is unclear whether Neal-Williams intends to bring a claim against them; he may amend his Complaint to do so if appropriate.

during an assault, from the medical examination room before his visit was complete and continued to beat him. These actions constitute deliberate indifference to a serious medical need. As such, defendants Butterworth, Robinette, Bryant, and Murphy's motion to dismiss Neal-Williams inadequate medical care claim against them will be denied.

To the extent Neal-Williams intends to bring a claim of failure to provide adequate medical care against any other named defendant, such claims fail. Even liberally construed, there is nothing in the Complaint to suggest any other defendant was personally aware of a serious medical need that went unaddressed by a medical professional. Therefore, to the extent that Neal-Williams intended to state a claim of inadequate medical care against defendants Addison, Darden, Villatoro, Oputa, Coulby, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari, those claims are dismissed.

### D. Disciplinary Proceedings

Neal-Williams claims that his due process rights were violated when the adjustment committee, consisting of defendants Walkins, Malagar, and Davis, found him guilty of five charges "without investigating the case or talking to all the witness[es] that [he] requested." ECF No. 1 at 13. He alleges that the "adjustment committee switched up words that I said during my hearing and wrote things that I did not say," in order to "destroy [his] correctional record because I already have a different civil suit against the Warden and Director." *Id.* at 13-14. Neal-Williams challenges a second disciplinary proceeding in which he alleges that Malagari, Erekosima, and Hernandez erroneously found him guilty of breaking a window for which they charged him $4,126. *Id.* at 14. Neal-Williams suggests that defendants took this action in order to prevent him from paying court fees. *Id.* at 14. Neal-Williams does not specify what harm he suffered as a result of being found guilty following the allegedly flawed disciplinary processes, other than the $4126 charge.

Under the Fourteenth Amendment, a pretrial detainee has a constitutional right "'to be free from punishment.'" *Williamson v. Stirling*, 912 F.3d 154, 173 (4th. Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Because a pretrial detainee has not been convicted of the crime with which he is charged, he retains a liberty interest in freedom from "punishment," even while he is detained to ensure his presence at trial. *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) (quoting *Bell*, 441 U.S. at 535-37). This principle applies to substantive and procedural due process claims by pretrial detainees. *Williamson*, 912 F.3d 173-74.

But, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 537). Loss of freedom of choice and privacy are inherent incidents of confinement. *Id.* That a "disability" is imposed for the purpose of punishment may be clear from "an expressed intent to punish on the part of detention facility officials[.]" *Bell*, 441 U.S. at 538. If not expressed, then a court still may infer an intent to punish, unless a "condition or restriction of pretrial detention is reasonably related" to a "legitimate governmental objective." *Id.* at 539; *see also Martin*, 849 F.2d at 870 (to establish that restriction is "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective"); *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005) (same).

Here, Neal-Williams fails to allege that he was deprived of any liberty interest following the first disciplinary process regarding the rule violations he was charged with following his altercation with Addison. He states that he believes that defendants wanted to prevent him from using the phone to call his family, but he does not allege that he was subjected to any such restriction. ECF No. 1 at 13. He further alleges that he was denied recreation time on several occasions, and alleges, without supporting facts, that Warden Malagari ordered staff not to give

22

him recreation time. *Id.* at 11-13. However, Neal-Williams does not have a liberty interest in the lost recreation time. It is unclear from the Complaint whether he was denied recreation on those few occasions when he demanded it or whether he was denied recreation time for several days or weeks. Even assuming he was denied recreation from the date of the incident, November 17, 2021, until he filed the Complaint on December 27, 2021, one month of lost recreation time does not constitute a liberty interest. *See Young v. Bishop*, 2017 WL 784664, *6 (D.Md. Feb. 28, 2017) (finding that pre-trial detainee's due process right to were not violated when he was subjected to 60 days of cell restriction where recreation time was limited to once per week). As Neal-Williams has not alleged that he was deprived of a liberty interest as a result of the alleged defects in this disciplinary procedure, he has not stated a claim that his due process rights were violated.

As to the disciplinary procedure regarding the broken window for which he was charged $4,126, Neal-Williams makes only the conclusory statement that he "ha[d] not a single thing to do with" the broken window and makes no allegations that he was denied due process.[9] *See* ECF No. 1 at 14.

Neal-Williams has failed to provide sufficient facts to support his allegation that his due process rights were violated as to either of the disciplinary procedures referenced in the Complaint; therefore, those claims will be dismissed as to all defendants.

### E. Property Claims

Neal-Williams claims that he was deprived of personal property including hygiene products, clothes, legal paperwork, and medical property. ECF No. 1 at 11-12. These allegations do not state a constitutional claim against any defendant. Neal-Williams does not specify whom

---

[9] To the extent that Neal-Williams alleges that he was charged with a violation related to the broken window in retaliation for the November 17, 2021, incident with Addison, he makes only conclusory statements and does not allege any facts to support such a contention.

he claims is responsible for taking his property, nor does he allege how he was harmed by the loss of the property. These threadbare claims will be dismissed as to all defendants.

## III.     Non-Dispositive Motions

Neal-Williams filed a motion styled "Moton to Request Documents/Camera Footage." ECF No. 19. Neal-Williams seeks the video footage from MCCF's hallway cameras on November 17, 2021, as well as video footage from a hand-held camera he states was used by a Captain Mudalu. *Id*. at 2. Additionally, he requests all documents related to the institutional investigation of the November 21, 2021 incident. *Id*. Defendants oppose the motion and filed a motion to quash it, arguing that the documents are requested from MCCF, which is not a party and was not served with the motion, and that the motion is premature.[10] ECF No. 23. The motion requests specific and pertinent evidence regarding the allegations in the Complaint, and the case is now moving to the discovery phase; production of the requested materials is likely appropriate. Nevertheless, since Defendants prefer strict adherence to the rules notwithstanding their unrepresented prisoner opponent, the Court will deny the motion without prejudice to refile after counsel is appointed. However, as there is no reason to quash the motion, the motion to quash will be denied.

Neal-Williams also filed a motion for appointment of counsel. ECF No. 25. Defendants Addison and Darden opposed the motion arguing that Neal-Williams did not set forth any exceptional circumstances why counsel should be appointed, and the remaining defendants joined in their opposition.[11] ECF Nos. 32, 24. Because the case is moving to the discovery phase which would be difficult if not impossible for an unrepresented prisoner to manage, Neal-Williams' motion will be granted.

## CONCLUSION

---

[10] Plaintiff filed a second document requesting video footage, which was docketed as correspondence rather than a motion. ECF No. 20.

[11] Defendants Darden and Addison filed a Motion for Leave to File Out of Time their opposition to Neal-Williams' motion for appointment of counsel. ECF No. 38. The motion shall be granted, *nunc pro tunc*.

For the foregoing reasons, the dispositive motions are granted in part and denied in part. Defendants Addison and Darden's Motion to Partially Dismiss the Complaint, ECF No. 31, shall be granted in part and denied in part. The Motion shall be granted in its entirety as to defendant Addison. The excessive force claim will proceed against Addison; all other claims will be dismissed as to Addison. As to Darden, the Motion will be granted as to the medical and property claims and denied as to the illegal strip-search claim. The excessive force and illegal strip search claims will proceed against defendant Darden.

Defendants Villatoro, Bryant, Oputa, Robinette, Butterworth, Coulby, Murphy, Kiplivi, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari's Motion to Dismiss, ECF No. 33, will be granted in part and denied in part. The Motion will be granted as to defendants Oputa, Coulby, Watkins, Davis, Erekosima, Hernandez, Talley, and Malagari, and the Complaint will be dismissed against them. The Motion will be denied as to the excessive force claims against Villatoro, Bryant, Robinette, and Butterworth; the claim of excessive force will proceed against these defendants. The Motion will be granted as to the claim of excessive force against Murphy. The Motion will be denied as to the illegal strip-search claim against Bryant; the claim regarding the illegal strip search will proceed against Bryant. The Motion will be denied as to the claims of inadequate medical care against Kiplivi, Butterworth, Bryant, Robinette, and Murphy; inadequate medical care claims will proceed against these defendants. The Motion will be granted as to violations of due process in disciplinary procedures and loss of personal property as to all defendants.

Neal-Williams' Motion to Request Video Footage and Documents, ECF No. 19, will be denied without prejudice. Neal-Williams' Motion for Appointment of Counsel, ECF No. 25, will be granted. Defendants Motion to Quash, ECF No. 23, will be denied. Defendants' Motion for Leave to File Out of Time, ECF No. 38, will be granted *nunc pro tunc*.

25

A separate order follows.

_____
Date

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE