IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RODJUAN ORLANDO JAMES
NEAL-WILLIAMS,

    Plaintiff,

v.

ADRIA ADDISON, *et al.*,

    Defendants.

Civil No. **21-3280 PJM**

## MEMORANDUM OPINION

In this prisoner civil rights case, initiated by *pro se* Plaintiff Rodjuan Orlando James Neal-Williams, the Court appointed *pro bono* counsel to represent Plaintiff, and counsel has recently filed an Amended Complaint (ECF No. 64). Two of the ten Defendants named in the Amended Complaint, Susan Malagari and Montgomery County, Maryland (the Municipal Defendants), have jointly filed a Motion to Dismiss Counts VI and XII of the Amended Complaint, or, in the Alternative, a Motion to Bifurcate (ECF No. 75). The Motion has been briefed (*see* ECF Nos. 78, 81), and the Court finds no hearing necessary. *See* D. Md. Local R. 105.6.

For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** the Municipal Defendants' Motion and will **BIFURCATE** all further proceedings against Defendant Montgomery County.

**I.**

The factual background to this case was discussed extensively in the Court's September 12, 2023 Memorandum Opinion addressing Defendants' prior Motions to Dismiss. *See* ECF No. 48. The Court incorporates that background by reference and supplements it with a general

1

overview of the allegations in Plaintiff's Amended Complaint insofar as relevant to the Municipal Defendants' present Motion.[1]

## A.

Plaintiff was formerly a pretrial detainee at the Montgomery County Correctional Facility (MCCF). ECF No. 64 ¶ 1. The MCCF is owned and operated by the County and, at all relevant times, Malagari served as the facility's Warden. *See id.* ¶¶ 20-21. The MCCF also employed individual Defendant Officers Adria Addison, Stephen Darden, Thomas Bryant, Oladys Beza Villatoro, Andrew Robinette, Jeffrey Butterworth, and Brandon Murphy, as well as Nurse Edith Kiplivi during the relevant period. *See id.* ¶¶ 11-18.

According to Plaintiff, on November 17, 2021, he was subjected to a litany of constitutional violations. He claims he was first physically assaulted by Addison in the MCCF's recreational pod after he asked for a mask to comply with the facility's then-extant COVID-19 prevention policy. *See id.* ¶¶ 25-29. Apparently, while being assaulted by Addison, Plaintiff pushed her away in self-defense. That led her to call for back up. *Id.* ¶¶ 29-30.

Darden and Villatoro soon arrived in the recreational pod and all three officers resumed beating Plaintiff by striking him in the face, restraining his arms, and pinning him to the ground with a knee on his back. *See id.* ¶ 31-33. Plaintiff says he saw (or felt) Bryant, Butterworth, Murphy, Robinette, and other (nonparty) Officers join in the beating. Other Officers who are named as Defendants did not participate in the beating but observed it without attempting to intervene and stop the use of force. *Id.* ¶ 33-34.

Eventually, Plaintiff was handcuffed and Addison, Bryant, Darden, Robinette, Villatoro and Butterworth escorted him out of the recreation pod to the processing unit of the facility. *See*

---

[1] The Court reviews the facts in the light most favorable to Plaintiff as the nonmoving party and draws all reasonable inferences in his favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2

*id.* ¶ 35. Along the way, Villatoro purportedly shoved him, and Bryant slammed his face against a glass window, applying such pressure to Plaintiff's skull that another detainee who witnessed the incident was apparently concerned that Plaintiff's "eye would pop out of the socket." *Id.* ¶¶ 35-36. Villatoro then allegedly tackled Plaintiff, and she and Bryant applied leg restraints on him. Again, other Defendant Officers watched without intervening. *See id.* ¶¶ 35-38. Once Plaintiff was back on his feet, some or all of the Defendant Officers proceeded to escort him to a processing cell, but not before Bryant slammed his face against a glass window a second time. *See id.* ¶ 40.

The processing cell to which Plaintiff was taken was located outside of the view of any surveillance cameras. *Id.* ¶ 42. Once in the cell, Bryant, Darden, and Villatoro allegedly resumed beating Plaintiff, with Addison, Robinette, Butterworth, Murphy, and others watching and not intervening. *See id.* ¶¶ 43-45. Eventually, Bryant, Darden, Robinette, and Butterworth subjected Plaintiff to a strip search, without any legitimate reason for doing so. The strip search was conducted in full view of female employees of the MCCF, including Addison and Villatoro. *See id.* ¶¶ 47-49.

After the strip search, Butterworth, Murphy, and Robinette took Plaintiff to a medical examination room, where he was briefly seen by Nurse Kiplivi. *Id.* ¶ 51. Plaintiff says that he was so distraught at the time, he could not relate to her the extent of his injuries, such that, instead of examining him or inquiring further, Kiplivi left shortly after arriving. Once Kiplivi left the room, Butterworth, Murphy, and Robinette lifted Plaintiff from the examination table and slammed him to the ground. In response to Plaintiff's cries of pain and protestations, Murphy said, "Shut up. You hit a black female. I don't care what you got to say." *Id.* ¶¶ 51-52. Thereafter, Plaintiff was taken out of the examination room and, along the way, Darden again

3

smashed his face into a glass window. Addison and other Officers saw this happen; Addison apparently laughed and told him that she "wanted . . . to see [him] cry." *Id.* ¶ 53. By this time, Plaintiff had bruises on his face and chest, abrasions, two cuts on his neck, a laceration in his left ear, and a contusion on his left eyebrow. *Id.* ¶ 55.

Darden, Robinette, and Butterworth then strapped Plaintiff, now handcuffed and shackled, to a restraint chair, allegedly with far more force than necessary, causing pronounced pain. *See id.* ¶ 56. Those Defendants then wheeled him to a different processing cell and left him alone for more than an hour. Nurse Kiplivi eventually arrived but refused Plaintiff's requests for medical care (whether to be given by her or by another provider), but she did check to see that his restraints were sufficiently tight. Kiplivi left and Plaintiff sat alone in the room for another hour. *See id.* ¶¶ 56-58.

Plaintiff continues: Butterworth and Robinette returned and extricated him from the restraint chair, then directed him to the medical unit but had to assist him with walking because he could no longer feel one of his legs. Once they arrived at the medical unit, Robinette stepped on Plaintiff's injured leg. *See id.* ¶¶ 58-59.

By the end of the day, Plaintiff says, he had a black eye, a swollen ear, eye and jaw pain, and contusions on various parts of his body. *See id.* ¶¶ 61-62. His physical pain persisted for months, and he claims to have suffered psychological trauma from the incident. *Id.* ¶¶ 64-65.

Plaintiff's torment purportedly did not end there—later that same day, Addison and the other Defendants filed a formal "Notice of Infraction" and "Incident Reports" against him, asserting that he had first assaulted Addison, among other infractions. *Id.* ¶¶ 66. A "Summary of Adjustment" disciplinary hearing was held on November 23, 2021, and Plaintiff was found guilty on all five charges included in the Notice of Infraction. Three days later, Malagari

4

approved the findings and sanctions flowing from the disciplinary hearing; she later denied Plaintiff's appeal without conducting any further investigation. *See id.* ¶¶ 69-71.

Plaintiff remained at MCCF until June 2023, having spent a total of eighteen months there. He claims that his mental health deteriorated as a result of the assault and its aftermath, and that he could not trust any MCCF employees moving forward. *See id.* ¶ 72.

**B.**

On December 27, 2021, Plaintiff filed a *pro se* Complaint against sixteen Defendants employed by the MCCF. ECF No. 1. His original *pro se* Complaint contained a number of difficult-to-comprehend allegations, but essentially, they were for: (1) excessive force, (2) sexual harassment, and (3) inadequate medical care. *See id.* He later filed a Motion for the Appointment of Counsel. ECF No. 25.

After a period of extensions of time for Plaintiff to properly serve the named Defendants, Addison and Darden filed a Partial Motion to Dismiss Plaintiff's sexual harassment and inadequate medical care claims against them. *See* ECF No. 32. The remaining Defendants filed a Motion to Dismiss for failure to state a claim. *See* ECF No. 33.

This case was assigned to this member of the Court on November 30, 2022.

On September 12, 2023, the Court issued an Opinion and Order resolving Defendants' Motions to Dismiss. *See* ECF Nos. 48, 49. The Court's decision granted in part and denied in part Addison and Darden's Partial Motion to Dismiss, granting the Motion as to the sexual harassment and inadequate medical care claims against Addison, and the inadequate medical care claim against Darden. As for the other Defendants, the Court permitted the following claims to proceed: (1) the excessive force claims against Villatoro, Butterworth, Bryant, and Robinette; (2) the illegal strip search claims against Bryant; and (3) the inadequate medical care

claims against Kiplivi, Butterworth, Bryant, Robinette, and Murphy. The Court otherwise dismissed all the claims against Defendants Oputa, Coulby, Kiplivi, Davis, Erekosima, Hernandez, Talley, and Malagari. *See* ECF No. 49.

The Court also granted Plaintiff's Motion for the Appointment of Counsel and granted him twenty-one days' leave to file an Amended Complaint once *pro bono* counsel had been appointed on his behalf. *See id.*

On January 16, 2024, Plaintiff timely filed a counseled Amended Complaint. In addition to asserting fourteen claims under 42 U.S.C. § 1983, the Maryland Constitution, and the common law, the Amended Complaint brings two new claims—Counts VI and XII—for municipal liability against the Municipal Defendants: Malagari and Montgomery County. Count VI alleges that the Municipal Defendants maintained or ratified a custom or practice that violates the U.S. Constitution, and Count XII makes identical allegations with respect to the Maryland Constitution. *See* ECF No. 64 at 29, 38.

On February 22, 2024, the Municipal Defendants filed the present Motion to Dismiss or, in the Alternative, Motion to Bifurcate, arguing that Plaintiff has failed to state a plausible municipal-liability claim in both Counts VI and XII of his Amended Complaint.

## II.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, the complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the facts alleged allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is properly dismissed where, even if true, the allegations "could not

raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The court must examine the complaint as a whole, accept all well-pled facts as true, and must construe the factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). That being said, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### A.

Preliminarily, the Municipal Defendants argue that the claims against Malagari should be dismissed because the Court dismissed the claims against her in its prior decision on Defendants' earlier Motion to Dismiss. *See* ECF No. 75 at 5. They contend the earlier Motion requested that Plaintiff's claims be dismissed with prejudice, and the Court's September 2023 Opinion "granted that motion without qualification." *Id.* Thus, according to the Municipal Defendants, the dismissal operates as an "adjudication on the merits," meaning that Plaintiff cannot pursue his present claims against Malagari. *See id.*

To be clear, the Court's prior order did not specify whether the dismissal of Plaintiff's claims was made with or without prejudice. *See* ECF Nos. 48, 49. In fact, the language of the dismissal order suggests that it was made without prejudice, since the Court granted Plaintiff leave to amend his Complaint and appointed *pro bono* counsel to represent him moving forward, implicitly through the drafting of an Amended Complaint as to those claims. *See* ECF No. 49. Had the dismissal been made with prejudice, there would be no need for an Amended Complaint. To the extent there is any ambiguity, the Court affirms that the dismissal was without prejudice, consistent with the Fourth Circuit's strong preference for adjudicating claims on the merits and its aversion to outright dismissal of *pro se* civil rights claims on pleading deficiencies. *See Laber*

7

*v. Harvey*, 438 F.3d 404, 426-27 (4th Cir. 2006); *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 417 (4th Cir. 2010).

Although the Court concludes that its prior dismissal of Plaintiff's claims against Malagari was made without prejudice, it is evident that Counts VI and XII against Malagari should now be dismissed with prejudice. Plaintiff has sued Malagari, former Warden of the MCCF, a County-run facility, in her "official capacity." ECF No. 64 ¶ 20; *see also* ECF No. 78 at 13.[2] It is well-settled that when a plaintiff brings a Section 1983 claim against a municipal official in his or her official capacity, as Plaintiff has done here, the municipality itself is the actual party in interest, not the individual official. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 469 (4th Cir. 2013).[3]

Accordingly, Plaintiff's claims against Malagari are duplicative of his claims against the County, and for that reason, the Municipal Defendants' Motion to Dismiss will be **GRANTED IN PART** as to his claims against Malagari, which will be **DISMISSED WITH PREJUDICE**.[4]

**B.**

Turning to the merits of the Municipal Defendants' Motion to Dismiss, they argue that Plaintiff has failed to state a municipal-liability claim for which relief can be granted under Section 1983. *See* ECF No. 75 at 7-9. They contend that, outside of the events of November 17,

---

[2] Mere labels in a complaint are not dispositive of the question of whether an individual has been sued in his or her individual or official capacity. *See Biggs v. Meadows*, 66 F.3d 56, 61, 66 (4th Cir. 1995). Instead, courts assess the nature of a plaintiff's claims to make this determination. *See Foreman v. Griffith*, 81 F. App'x 432, 435 (4th Cir. 2003). Plaintiff's present claims against Malagari turn on the question of whether Malagari and the County condoned or ratified a pattern or practice of constitutional violations. Thus, the nature of his claims confirm that Plaintiff is suing Malagari only in her official capacity.

[3] The Municipal Defendants also argue that Plaintiff has failed to state a separate claim for supervisory liability against Malagari under Section 1983. *See* ECF No. 75 at 6. Plaintiff states that he is not pursuing any such claim. ECF No. 78 at 13 n.5.

[4] Although Malagari will no longer be a named Defendant in this case, she remains, of course, amenable to discovery requests since the allegations in the Amended Complaint suggest that she may possess information that "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 45.

2021, Plaintiff has failed to identify any other incidents of unconstitutional behavior, much less a "known, widespread" pattern of unconstitutional behavior engaged in by Correctional Officers at the MCCF. *See id.* This, according to the Municipal Defendants, is fatal to Plaintiff's claims under Counts VI and XII, because he has not shown that Malagari or the County were aware of any unconstitutional actions on the part of the Officers or that the Municipal Defendants' own acts or omissions caused the injuries that Plaintiff claims to have suffered. *See id.*

Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by" the U.S. Constitution or federal law. 42 U.S.C. § 1983. Municipalities are "persons" subject to liability for purposes of Section 1983 claims. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A claim for municipal liability under *Monell* requires a plaintiff to plead sufficient facts such that it is plausibly inferred that "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional 'policy or custom' caused a violation of the plaintiff's constitutional rights." *Shaw v. Maryland*, Civ. No. ELH-18-782, 2019 U.S. Dist. LEXIS 158054, at *35 (D. Md. Sep. 16, 2019) (citing, e.g., *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

*Monell* claims are generally established under one of three theories of liability (or a combination thereof), where it is shown that: (1) a municipality maintained unconstitutional "written ordinances or regulations"; (2) individual policymakers engaged in unconstitutional actions or omissions such that those policymakers manifested a deliberate indifference to individuals' rights; or (3) a pattern or practice that is so "persistent and widespread" so as to

"constitute a 'custom or usage' with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell*, 436 U.S. at 691).

Regardless of what theory of liability is alleged, a plaintiff must show that a municipality's (or municipal policymaker's) affirmative act, or its deliberate indifference to an unconstitutional pattern or practice is causally connected to the injury suffered by the plaintiff. *See id.* Stated differently, "municipal liability will attach only for those policies or customs having a 'specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Id.* (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1389-91 (4th Cir. 1987)). This requirement serves to ensure that a municipality is held liable for its actions, and not the independent, singular actions of a municipal official, and that the municipality's conduct was the "'moving force' behind a deprivation of federal rights." *Id.* (quoting *Monell*, 436 U.S. at 694).[5]

Plaintiff's essential claims appear to be that the County condoned the MCCF employees' widespread use of excessive force, was deliberately indifferent to a need for medical care, and acquiesced in unreasonable searches in violation of the Fourth and Fourteenth Amendments. *See* ECF No. 64. A plaintiff states a plausible claim under the condonation theory of municipal liability by alleging that "municipal officials engaged in a 'persistent and widespread practice,' the 'duration and frequency of which indicate . . . actual or constructive knowledge of the conduct[,]' and that their failure to correct the conduct was 'due to their deliberate indifference.'" *Palma v. Montgomery Cnty.*, 598 F. Supp. 288, 299 (D. Md. 2020).

---

[5] Claims for municipal liability for violations of the Maryland Constitution are analyzed under the same principles as *Monell* claims for violations of the U.S. Constitution and, for that reason, "the Court need not undertake an independent analysis" of the state-law claims. *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 297 n.5 (D. Md. 2022).

10

Irrespective of whether the events of November 17, 2021 are considered a "single incident," as the Municipal Defendants suggest, *see* ECF No. 81 at 4-5, or are instead themselves a "pattern" of unconstitutional conduct, as Plaintiff avers, *see* ECF No. 78 at 10-12, the allegations in the Amended Complaint tend to suggest that those events were not "[s]poradic or isolated violations of rights," but rather so "widespread [and] flagrant" as to give rise to a plausible *Monell* claim. *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 403 (4th Cir. 2014).

For starters, Plaintiff alleges that he was assaulted numerous times over the course of multiple hours by a constantly alternating cast of assailants (some of whom beat him repeatedly). In addition to the Officers participating in the assaults, a large number of other Correctional Officers are said to have observed the assaults without taking any steps to intervene or otherwise deescalate the situation. Some of the most allegedly aggressive assailants were Officers of rank, such as Robinette and Butterworth (both Corporals), and Murphy (a Sergeant). Beyond the assaults, the Defendant Officers are said to have subjected Plaintiff to an allegedly unjustifiable strip search in full view of female MCCF employees, adding to his sense of humiliation. Kiplivi, the attending nurse at the MCCF, repeatedly denied Plaintiff's entreaties for medical care following the assaults, as did the Defendant Officers. At no point, Plaintiff claims, did any employee of the MCCF seek to prevent others from violating his rights or provide him with medical care.

Disturbing as these events may be (if they are proved to be true), they would ordinarily not necessarily give rise to municipal liability standing alone if no municipal policymaker otherwise had knowledge of or acquiesced in the alleged constitutional violations. *See Owens*, 767 F.3d at 403. At this point, however, subject to reconsideration, the Amended Complaint

does contain sufficient allegations to infer that the County, through Malagari, may have had knowledge of the violations and possibly condoned them. Specifically, the Amended Complaint states that the Defendant Officers fabricated a story that Plaintiff initially assaulted Addison, such that he was subjected to further formal discipline for the events of that day. When Plaintiff complained of his mistreatment in his appeal from the disciplinary proceedings, Malagari summarily denied his appeal without conducting any investigation into his claims.

At a minimum, if indeed Malagari's summary denial of Plaintiff's appeal occurred, it may have manifested the County's deliberate indifference to his injuries. *See Carter*, 164 F.3d at 218. Arguably, the Amended Complaint, if proven, suggests an atmosphere of impunity that would make Plaintiff's constitutional injuries "almost bound to happen, sooner or later," but they did not so much as raise an eyebrow on the part of the municipal policymaker authorized to intervene and ensure that such injuries did not recur. *Spell*, 824 F.2d at 1389-91. "Of course, to prevail on the merits," Plaintiff "will have to do more than *allege* a pervasive practice" of misconduct at the MCCF; "he must *prove it*." *Owens*, 767 F.3d at 404. But at this early stage, again subject to reconsideration, the Court finds Plaintiff has pled "sufficient factual content" for his Amended Complaint to survive the Municipal Defendants' Motion to Dismiss for failure to state a claim. *Id*.

In sum, the Amended Complaint sufficiently pleads a *Monell* claim against the County. The Municipal Defendants' Motion to Dismiss will be **DENIED IN PART** as to Plaintiff's claims against the County. This finding, however, may be academic for present purposes, in light of the Court's ruling with respect to the Municipal Defendants' request that the claims against the County be bifurcated.

### III.

As a fallback position, the Municipal Defendants request that further proceedings be bifurcated because moving forward in a consolidated proceeding would create the risk of undue prejudice to either the Municipal Defendants or the individual Defendant Officers. *See* ECF No. 75 at 10-11. Plaintiff contends that bifurcation would be premature at this stage, will needlessly extend the litigation, and will duplicate subsequent proceedings. *See* ECF No. 78 at 19-21.

A district court may order bifurcation where doing so would "avoid prejudice," "expedite and economize proceedings," or would otherwise be convenient for the Court and the parties. Fed. R. Civ. P. 42(b). The party seeking bifurcation bears of the burden of demonstrating that such measures are appropriate. *See Palma*, 598 F. Supp. 3d. at 299.

Indeed, bifurcation of *Monell* claims from those asserted against individual defendants is "the usual practice followed by this court." *Robertson v. Prince George's Cty.*, 215 F. Supp. 2d 664, 665 (D. Md. 2002); *see, e.g., Humbert v. O'Malley*, No. WDQ-11-0440, 2012 U.S. Dist. LEXIS 42261, at *7 (D. Md. Mar. 26, 2012). One reason for this usual practice is that in a case with claims against individual defendants and a municipality, a determination that the individual defendants did not violate a plaintiff's rights will necessarily preclude a finding of a "pattern or practice" of such violations for purposes of municipal liability. *See Harbin v. City of Alexandria*, 712 F. Supp. 67, 73 (E.D. Va. 1989), *aff'd* 908 F.2d 967 (4th Cir. 1990); *Humbert*, 2012 U.S. Dist. LEXIS 42261, at *7. Another, more practical, reason for bifurcation in such cases is that to prevail on a claim of municipal liability, a plaintiff will need to present evidence about other (similar) constitutional violations that may or may not involve the same individual defendants who are subject to his other claims. *See Swagler v. Harford Cty.*, Civ. No. RDB-08-2289, 2009 U.S. Dist. LEXIS 103081, at *5 (D. Md. Nov. 4, 2009). Not only could this evidence "unduly

prejudice" the Defendant Officers if presented at trial, the discovery of "pattern or practice" evidence will certainly be a more demanding, expansive, and expensive process than the discovery limited to Plaintiff's individual claims. *See id.* The Court finds it to be in the interests of judicial economy to bifurcate and stay discovery on Plaintiff's *Monell* claims against the County because there "would be no reason to delve into matters relating to the County's policies and practices unless or until the officer Defendants are found to have violated [Plaintiff's] constitutional rights." *Id.*

Accordingly, the Court will **GRANT IN PART** the Municipal Defendants' Motion, **WILL BIFURCATE** these proceedings, and **WILL STAY** discovery on Plaintiff's claims of municipal liability.

## Conclusion

For the foregoing reasons, the Court **ORDERS**:

1. Defendants' Motion to Dismiss Counts VI and XII of the Amended Complaint, or, in the Alternative, Motion to Bifurcate (ECF No. 75) is **GRANTED IN PART** and **DENIED IN PART** as follows;

    a. The Motion is **GRANTED** as to Plaintiff's claims against Defendant Malagari, which are **DISMISSED WITH PREJUDICE**;

    b. The Motion is **DENIED** as to Plaintiff's claims against Defendant Montgomery County;

    c. The Motion is **GRANTED** as to Montgomery County's Motion to Bifurcate;

2. The case is **BIFURCATED** and discovery is **STAYED** as to Plaintiff's claims against Montgomery County; and

14

3. The Clerk of Court is directed to **AMEND** the case's docket to correct the spelling of Plaintiff's first name (Rodjuan) and to reflect that the only remaining Defendants are Adria Addison, Stephen Darden, Thomas Bryant, Oladys Beza Villatoro, Andrew Robinette, Jeffrey Butterworth, Brandon Murphy, Edith Kiplivi, and Montgomery County.

A separate Order will **ISSUE**.

May 6, 2024

PETER J. MESSITTE
U.S. District Judge